The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Thank you, Your Honor. May it please the Court, my name is Mary McNeil and I represent Petitioner Appellant George Steen. Before I start my argument, I would like to clarify something in the State's Brief, something that I did not address in my reply brief. On page 39 of the State's Brief, the third paragraph, the last paragraph, third sentence in, it begins with, The record evidence established that and then it has a list of things. About the third one down is that another child in MS's biological family's household had been sexually abused by MS's father prior to being placed with the Steens. And I'd just like to clarify that the jury never heard that information. That was testified to, it's on the record, it's in the transcript, it was on voir dire that a case manager testified to that information, but the jury never heard it. And this case is about what the jury didn't hear. The jury didn't hear pivotal information because trial counsel did not do a reasonable investigation of his client's case. As you know, Strickland v. Washington has two prongs. The first is an unreasonable error by the trial attorney. And the second is there is a reasonable probability that but for that error, the outcome of the trial would have been different. Can I ask you, which of the decisions below do you think we should be considering in deciding this issue? Because there seems to be some confusion that the state trial court, in a very short opinion, suggested that perhaps both prongs hadn't been satisfied. Then the court of appeals assumed deficiency and focused solely on prejudice. And then the district court seems to have ignored that decision and just focused on deficiency. So which decision are we supposed to focus on? I would look at both of them. Both of what? And the court of appeals decision. But haven't we and the Supreme Court both said that's not true, that the only decision for Ed Poddeferent's purposes that matters is the last state court decision, and the last state court decision here is the North Carolina Court of Appeals decision? Yes, Your Honor. Well, no, but this seems pretty important because, as the Chief said, the trial court said no prong one violation and no prong two violation. But the state appellate court said we are not going to decide whether there was a prong one violation. We're just going to rule against your client on the grounds that he fails at prong two, which is a pretty important distinction because if that's the decision we're reviewing, there is no Ed Poddeferent's on prong one. So which do you think it is? I think it is the court of appeals decision, the prejudice prong. So what do you think, then, we should do given the fact that the district court's decision grants Ed Poddeferent's on prong one? That's the basis of the district court's decision. Yes. Well, the district court's decision is reviewed de novo. So you look at prejudice and you look at the court of appeals' opinion and the decision made on prejudice. So you're comfortable doing that? That makes sense. I mean, you look through the district court's decision and look at the last decision at the state court level. The concern that we might have, though, is we don't have the benefit of the district court's reasoning as to prejudice. Do you see any concern with that? No, I do not because I think, again, you're reviewing it de novo, and so I think you can make your own determination. Okay. So if that's your view, do we need to spend any time on deficiency or can we just simply focus on prejudice? We can. Well, I would like to address both. I know you would. And that's fine. It's your time, but if in the end we assume deficiency and move straight on to prejudice, that seems to be the really important question. But, again, it's your time. Yes, Your Honor, I agree. And I actually would like to start with the prejudice prong of Strickland. There are two crucial facts in the DSS records and the counselor's notes. One is that the oldest sister engaged in anal sex with MS when MS was around four and still in the biological home. The second is that while MS was testifying, he was under a person-centered plan, and one of his goals was not to lie about his sexual behaviors four out of seven days a week. The exact language is he is to accept responsibility for his sexual behaviors as evidenced by not lying, being manipulative, or rationalizing his actions four out of seven days. There are several reasons why the incident with the sister is very important and not cumulative. One, it provides an alternate source of sexual knowledge, specifically anal sex, that occurred before MS lived with the Steens. Second, it shows that MS has a motive to lie. He blames Mr. Steen because he wants to be reunited with his biological family. And it also could have been used to impeach MS's credibility. He said that it was Mr. Steen who taught him these behaviors and that Mr. Steen was the first one to do this to him. So that information is important. Okay. So let me just stop you there, and you may have some others, but I want to make sure you focus on what exactly our role here is, is that it may very well be that if we had been the decision-maker in the first instance, perhaps a trial judge or a court of appeals looking at the question of prejudice, might well agree with you that it seems like there's some kind of a smoking gun here. But, of course, we're on EPA review, which means that not only do you have to show evidence of prejudice, but you also have to convince us that no reasonable decision-maker, no fair-minded jurist could have come to a decision that the court of appeals came to with respect to prejudice. And to its credit, the court of appeals issued a reasoned opinion. They went through some of the evidence, maybe not all of it, and considered in the end that most of this information that you're now focusing on would have been cumulative to that which was presented to the trier of fact. And so how do you persuade us that no fair-minded jurist could have gotten that, could have arrived at that result? Well, first of all, all the evidence of alternative sources for MS's knowledge occurred after he had been with the Steens. The jury did not hear about an alternative source from before MS lived with the Steens. And can you help me to understand why that matters? Let me just walk through the reason I'm inclined to think that it doesn't, but I want to give you a chance to tell me why it does. So as I understand the defense's argument in this case is, well, one, Mr. Steen did not do, argument one, Mr. Steen did not do this. So two, when this individual says that Mr. Steen did this, that individual is not telling the truth. And part of the state's argument is, well, but one of the ways that you know he's telling the truth is that he's talking about things that he wouldn't know about unless something like this had happened to him. So the fact that he's talking about it is indirect evidence that he's telling the truth. And your response is, well, that only assumes that he couldn't have learned about it some way else because that could explain how he would know about things he wouldn't otherwise know. So for those purposes, it doesn't seem to matter if the incident the jury heard about is before or after he lives in the Steens. What matters is did this happen to the victim before he accused Mr. Steen? Because you need an explanation. Like the whole premise is, I mean, the defense's argument, although they have to dance around it, the premise is that this young man is lying or mistaken about what Mr. Steen did to him and the explanation is, well, how could he possibly have learned about this? And it's like, well, it turns out that after he lived with the Steens but before he accused Mr. Steen, something like this happened to him which could explain how he could. So could you just help me understand why does it matter if the incident happened after he lived with the Steens if the reason the evidence would be offered is to explain an alternative source of the information contained in the accusation that the young man makes to the authorities? Well, the state makes a strong argument talking about the incident with the two boys. Right. And the MAR court relies on the incident involving the two boys as well. I'm looking at a quote from their opinion. They also say the jury heard about the incident involving the two boys. That's an alternative explanation. The state presented that, was very clear to present that as something that happened after he was with Mr. Steen. I understand that temporally, but I don't understand how that matters for the defense's theory. So in some ways, if the prosecutor would say, members of the jury, you know Mr. Steen is guilty because this child knew about something he shouldn't have known about, and the defense attorney can say, what are you talking about? The jury also heard about this incident involving the two boys, which could also be the source of the information. I don't understand why the timing of when he lives with the Steens doesn't seem to me to matter for the defense argument. What matters is this incident happened before the victim accused Mr. Steen. Well, it's also important because it provides a reason for MS to lie about who did this to him. He was lying to protect his sister. It's also important because this is a credibility contest, and it goes to MS's credibility. He is asked, who taught you this? And he says, Mr. Steen. It's repeated several times in the video that is shown to the jury. He blames Mr. Steen, and it's important for the jury in assessing his credibility to know that MS is under oath and is lying. And it's also valuable for the jury to know he has a reason for lying about who did this to him. He's not mistaken. He is trying to protect someone, but the person he's trying to protect is his older sister because he wants to reunify with the family. So it's very important as to credibility. As is the person-centered plan that he was under when he was testifying. That's also very important and something that the jury did not know about. And it could have been used to impeach MS. It could have been used to impeach the counselor and the case manager who says he doesn't lie any more than the average child. He clearly has a problem with lying. And so those pieces are crucial to the case, and it's something that the jury did not hear. All right, Ms. McNeil, you've got some time for rebuttal, so thank you. Thank you. Ms. Lawrence. May it please the Court. I am Sherry Lawrence with the North Carolina Department of Justice, and I represent Respondents Leslie Colletus-Muce and Brett Bullis. The question before this Court, as Your Honors has mentioned, is whether the state court's application of the ineffective assistive counsel standard under Strickland was unreasonable. The doubly deferential standard under AEDPA and Strickland's deferential review of counsel's judgment applies in this case. Wait, but can you agree we don't actually apply double? So I've always understood doubly deferential as applying to Strickland prong one, and do you agree that notwithstanding what the district court said, there is no AEDPA deference at Strickland prong one because the North Carolina Court of Appeals made no finding about Strickland prong one? As to prong one, yes, that is correct, Your Honor. I've always understood doubly deferential to refer to Strickland prong one because the whole idea is that under Strickland prong one, we don't quarterback what lawyers do after the fact. Even under Strickland, plain vanilla Strickland, we give a lot of deference to lawyers' tactical choices, and then when we add AEDPA, we have to give even more deference to their tactical choices. I'm not sure that we use, say, doubly deferential at the prejudice prong because the prejudice prong isn't about deference to counsel at all, is it? I think I've always looked at it as both prongs, AEDPA applying to both prong one and prong two. Here, the Court of Appeals of North Carolina . . . Does it matter? Just to follow up on Judge Hyten's question, the court seems to refer to doubly deferential as deference to the lawyer and deference to the judge, the state court judge. When we look at prejudice, does it matter that it's like a predictive judgment? What prejudice is, is like if you had other information, would the jury have done something different? You've got a state court judge making a predictive judgment. It's not really a legal judgment in some sense. Do you think that affects the deference that we give to the state court? I would say no because the state court is in a position to analyze, of course, the facts before the case and applies the prejudice prong as long as the state court does a correct application of that analyst of prejudice under Strickland. Can I ask you, there's this flavor in your . . . I'm trying to understand this sort of . . . This is a question about prejudice. You make a variety of arguments in your brief. But the one I want to ask you and where it seems most troubling to me that we don't have any decision from the district court, how much does your argument depend on a prediction of whether the proffered evidence would have been admissible under the North Carolina rules of evidence? I know that's a flavor of your brief, but how important do you view that as important to your prejudice argument, the claim this evidence would have been inadmissible? Your Honor, I think that's more important to the prong one deficiency because . . . It's not unreasonable to not try to introduce evidence he probably couldn't have gotten in? Yes, Your Honor. It goes to that trial counsel's thought process and trial strategy in making his decision. Okay, but let's assume we're at Strickland prejudice two. How important is it to your argument in Strickland prejudice, the prediction that this evidence would have been inadmissible? I think the prediction that it would have been inadmissible as to prong two, not extremely important, because at that prong, you are looking at all of the other evidence that was presented. And under Strickland prong two, as Your Honors know, is a prejudice analysis. And basically, you're showing with all of this other evidence, had he done what he's supposed to, the jury still would have reached the same result. It would not have been a different result. And here, there was other evidence in the trial. There were at least one piece of evidence that was fatal to defendant's case and to defendant's claim as well. Defendant admitted, he admitted during jury trial, that he showered with this chow. My friend of the court argues that this sexual knowledge was very important. Defendant himself testified during the trial that four-year-old MS came to his house, and he came to his house and fostered placement initially directly from his biological mother's home. And he exhibited sexual behaviors within six days of that placement. Within six days of that placement, he pulled his underwear and his pants down and told defendant to suck it. In addition, he observed MS humping a pillow, and when inquiring about what he was doing, MS told him he was having sex and that he observed that from his parents. This shower admission is very important, taking into account this initial sexual behavior that was exhibited within six days, because defendant was, petitioner was a foster parent. He was a foster parent, saw this behavior within six days, however, admittedly still thought it was a great decision to shower with this young boy who was four years old. And so is your argument that once the jury hears that he did that, they're going to find him guilty? I'm just trying to make sure I understand why this argument is relevant. It is relevant, yes, exactly for that point, and that's only one piece of the puzzle, and I think that is a very piece that is an important piece that's fatal to defendant's claim here, as well as to his determination of guilt at trial. So he admitted that. In addition, there was testimony also from Mr. Ledford that he was the foster parent that took over some years later, and the foster parent whose home MS was residing in when he actually reported to the wife or to the foster mother that defendant petitioner had sexually abused him. So he asked Mr. Ledford, his foster dad at the time, hey, can you take a shower with me, and requested the same thing. Mr. Ledford had a more reasonable response, and he said no. He explained to him why that was inappropriate and why they weren't going to do that. So I think that's also very important because it forecasts a reasonable response from another foster parent. You know, I don't disagree with you that that's really, that's difficult evidence for Ms. McNeil, but there really isn't any other direct forensic evidence, right, of abuse that the state presented at trial. Is that fair? Your Honor, that is correct. There was no physical evidence, and there was no forensic testing that was done to confirm it. So essentially, as your colleague on the other side says, this really boils down to a credibility fight, right, who's telling the truth. And it would seem to me that the more evidence suggesting that one party or the other is not telling the truth, that that has significant potential to alter the jury's verdict. It does. However, here, in addition to all those things that I noted, what's also most important is the other evidence. We have testimony from MS. He consistently testified about these acts, that Petitioner sexually abused him by sticking his penis in his- Well, I mean, Ms. McNeil would say that he's just consistently lying about it. Yeah. And I think that goes also to what else the jury heard. There's no motive that was shown in this record for his, for him to lie about this. And I think Petitioner does state that- Ms. McNeil just offered one, the motive to lie is to protect his sister. Correct. And I think in the brief, it was the motive to lie, to protect his sister, because he wanted to be reunified with his mother. As motives go, it's not the most implausible motive I've ever heard. However, sitting in the jury's shoes, he lodged these accusations two years after, two years after being removed from the Steen's household. He was with the Ledfords. So waiting this almost two years to report did not benefit him at all. It didn't benefit him for being reunified with his mother or accusing his sister. The more reasonable, I think, thing would have been to include, to accuse who he was living with at the time, which was Mr. Ledford, if that was the case, because he was not in the Steen's household at that point. So can I ask you about the part of the MAR Court's reasoning that I've- Again, whether this gets over and put prejudice is a different question, I know. But let me just tell you what I find to be the most problematic aspect of the MAR Court's reasoning, is that at points they say, well, this isn't that bad because the jury heard other evidence, which I think makes sense as a theory, right? So let me just spot that I think you have a very good case on the lying, the tendency of the victim to lie, because as the MAR Court says, and I found it very persuasive, the jury heard tons of evidence about the victim lying. Person after person after person talked about the victim lying. The idea that if the jury heard even more evidence about the victim lying, they would just be like, we've been repeatedly told that this young man lied on numerous occasions. So that part I'm not troubled by. But here's the other part. They sometimes say, well, we don't need this other evidence because Mr. Steen testified to these other things as well. And that part seems, again, whether it's at the deference is a different question. But that strikes me as deeply problematic for the following reason, which is if the only source that a jury hears something from is the criminal defendant, it seems very plausible the jury might say, well, that's extraordinarily convenient that the only person who said anything about this is the person who's currently staring down the barrel of a felony conviction. They have a profound motivation to lie. So basically that anything the defendant says with no corroboration from anyone else, it strikes me that a prosecutor is going to argue and a jury might say, he's lying. Of course he's lying. And the reason he's lying is because he's guilty. So he can't tell the truth because if he told the truth, he'd admit he did it. So my worry is that a jury might very plausibly be inclined to discount heavily anything that the only source of is the defendant. And so I don't know in response to the argument, it would have been helpful to have evidence from other people. The MAR court says, well, they heard it from the defendant himself. And I'm not sure that really responds to that. So I want to give you an opportunity to explain why I'm wrong to be concerned about that. Yes, Your Honor. I think in this situation, looking at exactly what this defendant is claiming these records revealed and that he could have used this evidence here at trial to corroborate what he said.  Correct. And I think the most, I think the big, big piece is this additional sexual knowledge that he is saying occurred, sex abuse occurred from the older sister. Even had that evidence been introduced, we would argue, as argued in the brief, that it is very distinctive. And that distinction is very important here. So the jury would have heard evidence that he exhibited male-to-male sexual behaviors involving other males. And that is very important. But, sir, that's not really responsive to my question. The question I asked is, why shouldn't I be troubled when the MAR court says one of the reasons that something is no big deal because the jury heard it from the defendant himself. And I just suggested to you that I don't really think that's a plausible response. Are you defending what the MAR court said about that? Or are you saying that notwithstanding that that was problematic, we still under-ed the deference? We still defer to them? I would agree with that, as well as considering the other. Sorry, you would agree with what? That it would not be problematic under the facts of this case. I won't repeat the reason I think that's problematic. Why isn't it problematic for the reasons I just gave? Because of the other evidence in the case and the other evidence that the jury heard in this particular case. But I'm not talking about that part of the MAR court's opinion. I'm talking about the part where they said it's no big deal because they heard these things from the defendant himself. But I think if we're looking under Strickland and we're strictly under prong two, we would consider that. We would consider all of that evidence. And I think that evidence would be pivotal. And it goes into the jury's entire interpretation and how they look at the evidence and how they infer certain facts of the evidence and apply the law to the facts. So I think it would be very important. And you could not exclude what the jury heard. And the jury did hear testimony from Cold and Quick about the distinctions in that little kids define relationships and identify relationships with male and female relationships solely. However, here, the evidence that we're talking about that would have been helpful from Petitioner is the fact that his older sister, who was four years older, allegedly sexually abused him when he was at least four years old prior to going into the scene's custody. However, that would not be of any consequence here to the facts of this particular case because we have that male-on-male interaction, which is very distinctive. Cold and Quick, as well as Ms. Holland, both stated that. And they both stated that concern. In fact, I think Mr. Quick and Ms. Holland both noted those distinctions. As well as after the period of concern, all of his sex behaviors exhibited were towards males. There was the incidents with the group home back in 2009, which was the last incident, which was the incident that occurred when he was removed from Mr. Singh's custody that involved anal sex with males where they took turns. Petitioner says that distinction does not matter. However, we think that is very important. It's very pivotal to the decision in this court. That was part of the evidence. In addition to other parts of the evidence that was presented, Mr. Singh's reaction on February 13, 2009, once the school called to let them know that Ms. had actually gone under the bathroom stall to sexually exhibit sexual behaviors towards another child in the bathroom, Mr. Singh's immediate reaction, not where did he get that from, his immediate reaction was to blame his brother, Richard. It was convenient. It was convenient. Why? Because he knew Richard. Oh, I agree that's a very, very bad fact to defend. So looking at the totality of the evidence and unrestricted prong, too, that's what we do. We don't set out any other part. We look at everything that a jury heard. And the court of appeals opinion did exactly that as the prejudice prong. And in reaching and looking at each of those, they reached a decision that it was not an ineffective assistance of a counsel claim. Could I respond to an argument that Mr. Singh makes that I want to make sure I understand? Sure. So they basically have the argument. It's like it's true there was this other evidence, but this other evidence was different in character because the evidence the jury heard was about witnesses being said, like how might a child have acquired this knowledge? This is something like he could have witnessed something. He could have witnessed something in the home. He could have been exposed to sexually explicit material that no one his age should be exposed to. The evidence that the jury heard, my understanding, maybe with the exception of the incident involving the boys, was much more of the nature of how could a child of this age have learned for this. And I understand Mr. Singh saying that's different from saying evidence that he, in fact, did learn about stuff like this from this very specific instance. The argument I think Mr. Singh makes is that that is a difference in kind. Offering a hypothetical possibility about how someone might have learned something is very different, which sort of falls under the like is it possible, and then the response from the smart-alecky expert witness is like, I mean, anything's possible, counsel, I guess, right? Like anything's possible, right? Versus oh, no, no, it's not possible. Here is where this thing actually happened to him, so he definitely knew about it. And they argue that's a difference in kind, not a difference in degree. What is your response to that? My response to that is that the jury heard about these, I guess, MS's behavior in general, and it heard about he came from this troubled home. They considered all of this. Yes, that was the state's theory. However, no expert said that the defendant, in fact, sexually abused this boy. Why? Because it's forbidden under state decency in North Carolina. So we didn't, the expert didn't say that. However, there were breadcrumbs left to draw to that reasonable inference, and the jury was allowed to make those reasonable inferences based on the evidence. So, again, under prejudice prong two, considering all of the evidence in the record and what the jury heard, and if we note all of that evidence and there's not a reasonable probability that the jury would have reached a different verdict had they had the benefit of this additional information that he was sexually abused by his sister MS, his older sister. So the considering, again, I think I belabored the point of all of the evidence and kind of going back, recapping to the petitioner's admission, which is, I think, very fatal here in this particular case versus Mr. Letford's reaction to that, as well as the male-on-male distinction from the male-to-female sexual behavior. Considering all the trial evidence the jury heard, there's not a reasonable probability that the trial court, that trial counsel, that had trial counsel requested these records, the jury would have reached a different result. The state court decision should be upheld. Trial counsel conducted a reasonable investigation, made strategic decisions entitled to deference, and did not provide an effective assistance of counsel. If there are no further questions, the state would ask for this court to affirm the district court's order granting respondent's motion for summary judgment. Thank you, Ms. Lawrence. Thank you. Thank you. First, I would like to address kind of the character of the information that the jury heard about MS lying and the information in the person-centered plan. And I think this court said it very well in Love v. Freeman when it says, there is a marked difference between evidence that a child has lied occasionally in the past, a fairly typical and benign scenario, and evidence that social workers, school counselors, and foster parents believe the child can lie and does lie through her teeth and lives in a fantasy world, an unusual and much more sinister scenario. The information the jury had was more in the former category. He lies no more than the average kid. He doesn't lie about this type of thing. The evidence in the DSS records shows that this child has a serious problem with lying while he's testifying under oath, and he lies about these kinds of things. So I think the nature of the evidence is very important. As for the showers, Mr. and Mrs. Steen received MS when he was four years old. They wanted to keep him. They had him for two years. They wanted to adopt him. They treated him as their own child. There was testimony that MS took a long time bathing, was not good at cleaning himself. And so what Mr. Steen said, that when they were in a hurry, he would hop in the shower with MS. His wife would be in the bathroom kind of waiting there with a towel. And when Mr. Steen was done cleaning MS, he would hand MS out to Mrs. Steen, and she would go take him and get ready, and Mr. Steen would take a shower. Now, hindsight being 20-20, that was certainly an unwise decision. However, it doesn't indicate that anything happened in the shower. It's not proof that MS was molested by Mr. Steen. Also, the incident with the brother. MS was at school. He climbed under the bathroom stall. There was sexual contact with another child. They call Mr. Steen in, and they ask him, how does he know this? Like, why is he doing this? What's going on? I mean, that was the question that everybody asked MS once his behavior was out of control. And Mr. Steen was not covering for himself. He was trying to come up with an honest answer. He should have reported. I mean, what happened with Richard should never have happened. And it certainly should have been reported, and Mr. Steen was wrong not to report it. But his offering Richard as an alternative or as a possible source of this knowledge is not indicative of his guilt. It was the explanation that he honestly came up with when asked the question. So, again, this was a credibility contest. And the child that the jury heard about was very different from the child in the DSS records when it came to credibility. And the home that MS came from, the description was he was taken from the home. This was a home that the mother was neglectful because her boyfriend had committed suicide a couple months earlier. She became depressed and couldn't care for the children. MS came from a very different home. There was a lot of things, to say the least. It was a house of horrors, and it was horrible. And it explains a lot of his behavior. And the jury never heard about it, and they should have. And if they had, there's a reasonable probability that the outcome of this trial would have been different. To find that Mr. Steen did not receive ineffective assistance of counsel is objectively unreasonable and a clear violation of U.S. Supreme Court law. And we ask the court to grant Mr. Steen relief. Thank you, Ms. McNeil. We appreciate it. I see on my court sheet, Ms. McNeil, that you are court appointed. I want to thank you on behalf of the court for taking on the appointment. And these cases are challenging for a host of reasons, and so we are grateful to you for taking it on. We'll come down and greet you and move on to our second case. Thank you.
judges: Albert Diaz, Julius N. Richardson, Toby J. Heytens